LAW OFFICE OF MORALES & LEAÑOS
JAIME A. LEAÑOS (#159471)
JAZMIN MORALES (#286894)
75 East Santa Clara Street, Suite 250
San Jose, California  95113
Telephone:   (408) 294-6800
Facsimile:    (408) 294-7102
Email:        jleanoslaw@pacbell.net
              jmmorales@gmail.com

Attorneys for Plaintiff
Eliel Paulino

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSÉ FACILITY

| | |
|---|---|
| ELIEL PAULINO,<br><br>                    Plaintiff,<br><br>          v.<br><br>MARCO CRUZ, INDIVIDUALLY AND AS AN OFFICER OF THE  SAN JOSE POLICE DEPARTMENT, GERARDO SILVA, INDIVIDUALLY AND AS AN OFFICER OF THE  SAN JOSE POLICE DEPARTMENT, GURBAKSH SOHAL, INDIVIDUALLY AND AS AN OFFICER OF THE  SAN JOSE POLICE DEPARTMENT, AND DOES 1-10, INCLUSIVE,<br><br>                    Defendants. | Case No.:    CV  16-02642 - NC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br><br>Date:  June 28, 2017<br>Time: 1:00 p.m.<br>Dept.: Courtroom 7, 4th Floor<br><br>[Declaration of Jaime A. Leaños with attached exhibits; *filed concurrently herewith*] |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 2

III. LEGAL STANDARD ......................................................................................... 7

IV. ARGUMENT ...................................................................................................... 8

  A.  The Defendants' Version of the Facts is Incompatible and Impossible in Light of Juan Ramirez Testimony and the Video. ................................................................... 8

  B.  There are Several Triable Issues of Material fact ..................................................... 9

    1.  It is disputed whether Mr. Paulino took a "pre-asaultive" stance ......................... 9

    2.  It is disputed whether Mr. Paulino pulled away from Officer Cruz .................. 10

    3.  It is disputed whether Mr. Paulino was actively trying to keep his arm underneath his body .................................................................................................... 11

  C.  Plaintiff has not alleged a false arrest claim ........................................................ 11

  D.  Officers Cruz, Silva and Sohal Used Excessive Force When They Assaulted Mr. Paulino Without Any Legal Justification. ................................................................ 12

    1.  Legal Analysis ..................................................................................................... 12

    2. Nature and Quality of Intrusion ......................................................................... 14

    3.  Government Interest ............................................................................................ 15

    4.  Balancing Governmental Interest Against Nature of Intrusion ......................... 18

  E.  Defendant Officers Are Not Entitled to Qualified Immunity ............................... 19

  F.  Plaintiffs' State Law Claim Raises Triable Issues Of Fact ................................... 22

V. CONCLUSION .................................................................................................... 22

1

### Table of Authorities

2

**CASES**

3

*Act Up! Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) .................................... 21

*Adickes v. S.H. Kress & Co.* 398 U.S. 144 (1970) ........................................... 7

*Anderson v. Creighton,* 483 U.S. 635, 641 (1987) ........................................... 21

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).......................................... 7

*Blackenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007)................................... 14

*Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) ........................................... 20

*Bryan v. McPherson*, __ F.3d __, 2009 WL 5064477, at *2 (9th Cir. Dec. 28, 2009) ... 12

*Crawford-El v. Britton*, 523 U.S. 574, 587 (1998) ........................................... 19

*Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir.2001)…………………………12,14

*Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003)……………8,13,20

*Espinosa v. City & County of San Francisco,* 598 F.3d 528, 532 (9th Cir. 2010) ......... 20

*Estate of Diaz v. City of Anaheim*, 834 F.3d 1048 (9th Cir. 2016), ............................... 16

*Glenn v. Washington Cnty.*, 673 F.3d 864, 870 n.7 (9th Cir. 2011)............................... 20

*Graham v. Connor*, 490 U.S. 386, 396-97 (1989).......................................... 12

*Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982) ........................................... 19

*Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992)......................................... 7

*Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) ........................................... 7

*Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997)................................. 20

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,

   841 F.2d 872, 875 (9th Cir. 1987)................................................................. 7

*Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) ........................ 13

*Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007...................... 13

*Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003).............................................. 12

*Millender v. County of Los Angeles*, 564 F.3d 1143 (2009)........................................... 20

*Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003)............................................ 17

*Price v. Sery*, 513 F.3d 962, 980 (9th Cir. 2008) ................................................................ 13

*Santos v. Gates,* 287 F.3d 846, 855 n. 12 (9th Cir.2002) ................................................ 20

*Saucier v. Katz*, 533 U.S. 194 (2001) ........................................................................ 20

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) ...................................................... 8

*Smith v. City of Hemet*, 394 F.3d 689, 701 (2005) (*en banc*) ........................................ 12

*Tennessee v. Garner*, 471 U.S. 1, 8 (1985) ........................................................ 12

*Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011) .................................... 20

*United States v. Mohr*, 318 F.3d 613, 623 (4th Cir. 2003) ............................................ 15

*United Steelworks of Am. v. Phelps Dodge Corp.*,

     865 F.2d 1539, 1542 (9th Cir. 1989) ............................................................ 7

*Young v. City of Los Angeles,* 655 F.3d 1156 (9th Cir. 2011) .................................. 15,17

**CODES**

Fed. R. Civ. P. 56(c) ................................................................................ 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The court should deny Defendants' Motion for Summary Judgment ("Defs' Mot." or "Motion") with respect to the use of force by Officer Marco Cruz ("Cruz"), Gerado Silva ("Silva") and Gurbaksh Sohal ("Sohal") ( collectively the, "Defendants") against Eliel Paulino ("Mr. Paulino" or "Plaintiff" or "Eliel"). Plaintiff's Section 1983 excessive force claim under the Fourth Amendment, and state claims for battery, negligence, intentional infliction of emotional distress and violation of Cal. Civ Code §52.1 ("The Bane Act") raise triable issues of fact regarding Defendants' use of force.

The Defendants used unreasonable force against Mr. Paulino by grabbing him, throwing him to the ground and striking him with their batons, causing him serious physical injuries. Mr. Paulino was unarmed, compliant and was not an immediate threat to the Defendants at the time he was assaulted and injured. Mr. Paulino had been detained for a traffic violation and was not under arrest at the time he was assaulted. Although the defense claims that Mr. Paulino resisted arrest during this incident justifying the use of force, the disputed and undisputed facts show otherwise, including a video from a security camera that the Defendants did not know was recording them, as well as testimony from percipient witness Juan Ramirez ("Ramirez".) Because the video and testimonial evidence contradict the Defendants' version of the incident, there are triable issues of material fact and Defendants are not entitled to judgment as a matter of law on Plaintiff's Fourth Amendment excessive force claim.

These same factual disputes also preclude the Defendants' qualified immunity defense because their assault and batoning violated clearly established law when the record is viewed in Plaintiffs' favor. Plaintiffs' pendent battery, negligence, and intentional infliction of emotional distress and violation of Cal. Code Civil §52.1 also raise triable issues and are not subject to qualified immunity.

////

## II.     STATEMENT OF FACTS

On August 16, 2015, at approximately 2:08 a.m., officer Sohal was on patrol in the area of 3137 Cadillac Drive, in San Jose. (Deposition of Officer Gurbaksh Sohal, attached to the Declaration of Jaime A. Leaños ("Leaños Decl.) as Exhibit A ("Sohal Depo") at 12:16-25; 13:1-13). Officer Sohal and Officer Silva were in a two-man patrol vehicle when they saw Mr. Paulino's vehicle. (Sohal Depo at 70: 8-12.) According to Officer Sohal, Mr. Paulino was pulled over because he did not have a proper functioning license plate light. (Sohal Depo at 66: 15-18.)  From when Officer Sohal first wanted Mr. Paulino to pull over to where he parked his car, approximately 30 seconds passed. (Sohal Depo at 66: 11-14.)  Mr. Paulino parked in his parking space and stayed in his vehicle until Officer Silva asked him to exit and he complied. (Sohal Depo at 78: 7-17.)  Prior to August 16, 2015, Officer Sohal did not recall having   any contact with Mr. Paulino or with 3137 Cadillac Dive, Apt. 16. (Sohal Depo 68:22-25; 69: 1-4.)  Officer Sohal did not believe Mr. Paulino was a gang member and there was nothing he was wearing that made him believe that he was a gang member. (Sohal Depo 72: 21-25; 73: 1-7.)

After Mr. Paulino exited his vehicle, Officer Sohal conducted a pat search and checked Mr. Paulino's legs, socks and waistline.  (Sohal Depo at 83: 2-25; Ramirez Video, attached to Leaños Decl. as Exhibit B ("Ramirez Video") at 3:15-3:58.)  Officer Sohal did not locate any weapons and Mr. Paulino was cooperative. Mr. Paulino provided the officers his I.D. (Sohal Depo at 84: 1-13.)  Approximately 5 minutes after the stop, Officer Cruz responded to the scene to assist in a DUI investigation.  Once Officer Cruz arrived, Mr. Paulino was asked to move to the right front quarter panel of the patrol vehicle. ("Sohal Depo at 88: 1-7.)  At this point,  Officer Cruz stayed with Mr. Paulino, Officer Sohal went to Mr. Paulino's truck to search ("Sohal Depo 89:3-14.)  and Officer Silva is in the patrol vehicle checking background information on Mr. Paulino. (Sohal Depo at 89: 15-20.)

As the investigation was going on, Mr. Paulino's father was standing inside

Apartment 16 at 3137 Cadillac Drive (Sohal depo at 89: 21-25.)  Mr. Paulino's father appeared intoxicated and was yelling (Sohal Depo at 90: 1-4.)  Officer Sohal was able to see inside the apartment, took a look around and noticed a bunch of beer cans in the kitchen (Sohal Depo at 91: 3-11.)

According to Officer Cruz, as Officer Silva is doing a background check and Officer Sohal is searching Mr. Paulino's truck, he was keeping an eye on Mr. Paulino and his father. (Deposition of Officer Marco Cruz, attached to Leaños Decl. as Exhibit C, ("Cruz Depo")  at 65: 12-21.) Mr. Paulino is not handcuffed because it is just an investigation and he is just being detained and not under arrest. (Cruz Depo at 65: 22-25; 66: 1-7.)  Mr. Paulino was cooperative and complying with their directions. (Cruz Depo at 66: 12-16.)  While being detained, Mr. Paulino, is having a conversation with his father who is inside his apartment. Officer Cruz did not know what they were talking about because they were speaking in Spanish. (Cruz Depo at 68: 9-19.) According to Officer Cruz he never told Mr. Paulino to shut up, but he did tell him no more talking in English. (Cruz Depo at 68: 20-25; 69: 1-15.)  When Officer Cruz told Mr. Paulino no more talking,  Eliel was not interfering with Officer Silva or Officer Sohal's investigation (Cruz Depo at 70: 20-25; 71: 1-2.)  Aside from talking, Mr. Paulino did not do anything else that was interfering with the investigation (Cruz Depo at 72: 23-25; 73: 1-2.)  According to Officer Cruz, he doesn't speak Spanish and he didn't know if Mr. Paulino was asking his father to come out and fight them (the Officers)  or grab a bat or grab a gun so he was fearing the worst. (Cruz Depo at 74: 5-18.) Officer Cruz did not know that Mr. Paulino was asking his father to lock up his truck. (Cruz Depo at 78: 8-15.)  It was Officer Cruz's decision to handcuff Mr. Paulino at that time. (Cruz Depo at 73: 3-5.)

On the morning of August 16, 2015, Juan Ramirez ("Ramirez") lived at 3137 Cadillac Drive, Apartment number 20, San Jose, California 95117. (Deposition of Juan Ramirez, attached to the Leaños Decl. as Exhibit D ("Ramirez Depo") at 16:13-25; 17:1).  At approximately 2:00 a.m., he was sleeping and heard a patrol car siren, and

they had their lights on pointing in the direction of his window. (Ramirez Depo at 19: 21-25.)  As he looked out of his window, the first thing Ramirez saw was the police vehicle park in front of Eliel's apartment. (Ramirez Depo at 20:16-22.)  Ramirez was on his bed kneeling, he had a complete view of the parking lot and the patrol vehicle was approximately 20 feet away. (Ramirez Depo at 21: 1-8.)  Ramirez was able to hear the police. (Ramirez Depo at 21: 23-24.)  During the initial contact, there were two officers present ("Officer Silva" and "Officer Sohal".)  One of the officers was giving Eliel orders and the other one was checking out the parking lot. (Ramirez Depo at 22:24-25; 23: 1-5.)  Eliel stayed in his vehicle when he was ordered to do so. (Ramirez Depo at 23; 18-20.)  Ramirez saw Eliel get out of his vehicle when he was ordered to do so (Ramirez Depo 23: 21-25; 24:1.) Eventually, Eliel walked toward the officers. (Ramirez Depo 24: 4-7.) Eliel did not look angry and he did not look agitated, he just walked toward the officers. (Ramirez Depo 24: 14-19.)

The Officers asked Eliel for his name and identification.  Eliel told the officers where he lived, and pointed to his apartment which was about seven feet away from where he was standing. (Ramirez Depo 25: 2-16.) During this discussion, Eliel was being cooperative. (Ramirez Depo 25: 21-25.) At some point after the police started speaking with Eliel, they took his wallet and searched his waist area.(Ramirez Depo 26: 4-18.) Eliel was cooperative while he was being searched. (Ramirez Depo 26: 19-22.) After Eliel turned over his I.D. to the police and was searched, a third officer ("Cruz") arrived. ("Ramirez Depo 26: 23-25; 27:1.)  From when the police first stopped Eliel's vehicle to when the third officer arrived on scene, Eliel was cooperating with the police. (Ramirez Depo at 27: 11-15.)

Eliel moved to the front of the patrol car and the Asian officer ("Cruz") went with him. Eliel was towards the fender on the right side of the patrol car and the Asian officer ("Cruz") was about three feet away. (Ramirez Depo at 29: 14-25; 30: 1-11.) Eliel was had his legs crossed and his hands in his pockets and he was leaning on the vehicle in a comfortable position. (Ramirez Depo 33: 20-25; 34: 1-4.)  Eliel he did not

1    appear angry and he did not appear agitated. Eliel was complying with the police.

2    (Ramirez Depo 34: 5-17.) As Eliel was standing there he was giving the keys to his

3    father to close the truck and the Asian officer ("Cruz") told him to shut up. (Ramirez

4    Depo 34: 18-24.)  Officer Cruz told Eliel to shut up between three and five times.

5    (Ramirez Depo 35: 11-18.) Eliel did not say anything to the officer.  Eliel was just

6    telling his father to lock his truck. (Ramirez Depo 35: 19-25.)  As Officer Cruz told

7    Eliel Paulino to shut up, the officer changed his posture and grabbed Eliel's left hand,

8    and with his right hand, the officer grabbed his handcuffs. (Ramirez Depo at 36: 15-21.)

9    Officer Cruz did not tell Eliel that he was going to arrest him when he put his hands on

10   him. (Ramirez Depo at 37: 4-6.) According to Ramirez, when Officer Cruz grabbed

11   Eliel his legs were crossed and he lost his balance. (Ramirez Depo at 36: 20-24.) Eliel

12   slid towards the patrol car and hit or broke the mirror.  (Ramirez Depo at 36: 24-25; 37:

13   1.)

14         As Eliel was falling, the Spanish speaking officer ("Silva") hit Eliel directly in

15   the stomach. (Ramirez Depo at 37: 10-13.)   When Silva hit Eliel in the stomach, Eliel

16   bent over, and the Asian Officer ("Cruz") threw him on the ground and got on top of

17   him while the other officer hit him twice. (Ramirez Depo at 38: 14-20.)  Eliel did not

18   resist the officers nor did he fight with the officers before he was thrown to the ground.

19   (Ramirez Depo at 39: 1-8; Declaration of Juan Ramirez, attached to Leaños Decl. as

20   Exhibit E ("Ramirez Decl.") at ¶¶ 10, 11.)  After Eliel was thrown to the ground, he

21   landed face down in front of the bumper. (Ramirez Depo at 40: 11-16.)   After the

22   Spanish Officer ("Silva") hit him, the Asian Officer ("Cruz") was on top of him, the

23   third Officer ("Sohal") arrived and put his knee on his back and hit him very hard with

24   the baton. (Ramirez Depo at 40: 17-23.)

25         Ramirez had a clear view of Officer Sohal hitting Eliel with the baton. (Ramirez

26   Depo at 40: 24-25; 41:1.) At no time they were striking him with the baton were the

27   officers saying anything to Eliel. (Ramirez Depo at 41: 13-22.) Mr. Ramirez saw

28   Officer Sohal strike Mr. Paulino with the baton approximately 16-18 times.  Eliel was

1   not fighting with the police as he was being hit by the baton. (Ramirez Depo at 42: 5-8.)

2   Eliel was not resisting arrest as he was lying face down. (Ramirez Depo at 43: 3-6.)

3   Eliel was not fighting with the police as he was face down on the ground. (Ramirez

4   Depo 44: 11-14; Ramirez Decl. at ¶¶12,13.)  Mr. Paulino could not give his right arm to

5   the police, even if he wanted to.  His right arm was under his body and both officers

6   were on top of Eliel and he was lying face down. (Ramirez Depo 44: 25; 45 1-19.)  Mr.

7   Ramirez could see and hear the officer's baton strikes to Eliel's arm. (Ramirez Depo

8   45: 20-25; 46: 1-5.) The only thing Eliel said as he was being hit was, "no problem"

9   and he was yelling  and it sounded like he was in pain. ((Ramirez Depo 43: 8-15.)

10        Mr. Ramirez had installed  a video camera in the back of his apartment and this

11  incident was captured on his video camera. (Ramirez Depo 46: 8-13;  Ramirez Decl. at

12  ¶15.) According to Mr. Ramirez the video is a fair and accurate depiction of the events

13  he witnessed on August 16, 2015. (Ramirez Depo 48: 2-5.)  Based on what Mr.

14  Ramirez observed, Mr. Paulino did not do anything that justifies what the police

15  officers did to him. (Ramirez Depo at 58: 14-18.) The video accurately shows that Mr.

16  Paulino did not challenge, resist, fight or threaten the officers at the time he was

17  arrested. (Ramirez Decl. at ¶16.)   According to Mr. Ramirez, he and his daughter

18  downloaded the video to the internet because they are against police brutality.  Mr.

19  Ramirez gave a copy of the video to Mr. Paulino so he would have proof of what the

20  police had done.  (Ramirez Depo at 56: 20-25; 57 1-16.)

21         According to Officer Sohal the video of the incident is not an accurate depiction

22  of what occurred on the morning of August 16, 2015, because it doesn't show Mr.

23  Paulino actively resisting and actively preventing the police from obtaining his arm and

24  taking him into custody.  (Sohal  Depo  at 62: 8-18.) According to Officer Cruz, the

25  video shows Mr. Paulino  taking a fighting stance. (Cruz Depo at 79: 19-25; 80: 1-4.)

26          After Mr. Paulino was arrested he was charged with violating Vehicle Code

27  Section(s) - 23152(a) – (Driving Under the Influence); 23152(b) – (Driving with A

28  Blood Alcohol Content of .08 or Higher); 12500 – (Driving Without a License) and

1  Penal Code Section 148(a) – (Resisting Arrest).   Once the videotape was submitted to
2  the Santa Clara County District Attorney's Office and witness Juan Ramirez provided a
3  statement to the Santa Clara District Attorney's Office,  all of the charges were
4  dismissed.

5

6  **III.   LEGAL STANDARD**

7          On a motion for summary judgment, the Court must view the evidence presented
8  in the motion in the light most favorable to the nonmoving party.  *Adickes v. S.H.*
9  *Kress & Co.* 398 U.S. 144, 158–59 (1970); *Lake Nacimiento Ranch Co. v. San Luis*
10 *Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987).  "[I]n ruling on a motion for
11 summary judgment, the nonmoving party's evidence "is to be believed, and all
12 justifiable inferences are to be drawn in [that party's] favor."  *Hunt v. Cromartie*, 526
13 U.S. 541, 552 (1999) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255
14 (1986)).  "A justifiable inference is not necessarily the most likely inference or the
15 most persuasive inference.  Rather, an inference as to another material fact may be
16 drawn in favor of the nonmoving party . . . if it is rational or reasonable."  *United*
17 *Steelworks of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1542 (9th Cir. 1989)
18 (internal citation and quotation marks omitted).
19         Further, summary judgment cannot be granted where a genuine dispute exists as
20 to "material facts."  Fed. R. Civ. P. 56(c).  Even where the basic facts are undisputed,
21 summary judgment should be denied if reasonable minds could differ on the inferences
22 to be drawn from those facts.  *Adickes*, 398 U.S. at 158–59; *Lake Nacimiento Ranch*
23 *Co.*, 841 F.2d at 875.  Despite an officer's first-hand testimony to the contrary, entirely
24 circumstantial evidence may be sufficient to create a triable issue of fact.  *Hopkins v.*
25 *Andaya*, 958 F.2d 881, 888 (9th Cir. 1992) (holding there was a triable issue of fact on
26 whether the officer's reported subjective fear of being killed was objectively
27 reasonable because a medical report showed the officer's injuries were superficial).
28 The court must carefully examine all the physical evidence in the record, such as

medical reports, contemporaneous statements by the officer and eyewitnesses, and any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts.  *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

Because the reasonableness inquiry "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment . . . should be granted sparingly" in excessive force cases.  *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003).  The Ninth Circuit has urged special caution in cases where the alleged excessive force resulted in death:

> [T]he judge must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person [who is] dead—is unable to testify.  The judge must carefully examine all the evidence in the record, such as medical reports, contemporaneous statements by the officer and the available physical evidence, as well as any expert testimony proffered by the plaintiff, to determine whether the officer's story is internally consistent and consistent with other known facts.

*Scott*, 39 F.3d at 915.

## IV.   ARGUMENT

### A.   <u>The Defendants' Version of the Facts is Incompatible and Impossible in Light of Juan Ramirez Testimony and the Video.</u>

The facts as describe by the Defendants are impossible and incompatible with the facts as set forth by percipient witness Juan Ramirez and the videotape of the incident. Ramirez stated that Eliel did not threaten or resist Officer Cruz before he was grabbed by Officer Cruz. (Ramirez Decl. at ¶¶ 11, 12.)  More importantly, the video does not show  that Mr. Paulino was combative or resisting arrest at the time of this incident (Ramirez Video at 8:45-9:01.) According to Ramirez, Mr. Paulino did not resist the

officers nor did he fight with the officers before he was thrown to the ground. (Ramirez Depo at 39: 1-8.)  Mr. Paulino did not resist or fight the officers after he was thrown to the  ground. (Ramirez Decl. at  ¶¶ 12,13 .) After being thrown to the ground,  Mr. Paulino could not give his right arm to the police because it was under his body and both officers were on top of Eliel and he was lying face down. (Ramirez Depo 44: 25; 45 1-19.)    Ramirez's testimony is consistent with the video. Therefore, it appears that the testimonial and video evidence do not support the Defendants' version of events.

**B.     There are Several Triable Issues of Material fact**

**1.  It is disputed whether Mr. Paulino took a "pre-asaultive" stance**

Summary judgment cannot be granted in this matter because there are several genuine disputes of material facts.  Fed. R. Civ. P. 56(c).  First, there is a material factual dispute as to whether Mr. Paulino posed an immediate threat to officer safety or the safety of others by engaging in "pre-assaultive" behavior, made his hands into a fist, squared his hips and shoulders and made a blade stance (Cruz Depo at 81: 17-21.) However, Mr. Ramirez testified that Mr. Paulino did not resist the officers or  fight with the officers before he was thrown to the ground. (Ramirez Depo 39: 1-8.)   Eliel was had his legs crossed and his hands in his pockets and he was leaning on the vehicle in a comfortable position. (Ramirez Depo 33: 20-25; 34: 1-4.)

Additionally, the video of the incident does not show Mr. Paulino either clenching his fists or assuming a fighting stance (Ramirez Video at 8:45-9:01.) A reasonable jury could conclude that Mr. Paulino did not take a "pre-assaultive" stance or clench his fists prior to being forced to the ground by Officer Cruz. Clearly, if Mr. Paulino did not pose a physical threat to Officer Cruz during the incident, then a jury could easily find that the beating and baton blows constituted excessive force under the Fourth Amendment**.** (Declaration of Roger Clark, attached to Leaños Decl., as Exhibit F, ("Clark Decl." at ¶ 18(I)(J)(K)**.**)  Because there is a triable issue of material fact as to

1   whether Mr. Paulino ever took a "pre-assualtive" stance, summary judgment is

2   inappropriate and Defendants' Motion should be denied on this basis alone.  Fed. R. Civ.

3   P. 56(c).

4

5           **2.      It is disputed whether Mr. Paulino pulled away from Officer Cruz**

6           There also remains a material factual dispute as to whether Mr. Paulino pulled his

7   hand and body away from Officer Cruz as Officer Cruz attempted to place Mr. Paulino

8   in handcuffs. Officer Cruz contends that Mr. Paulino continued to speak to his father in

9   Spanish after repeated commands to "shut up."  Officer Cruz  contends he was going to

10  place Mr. Paulino in handcuffs and as he went to grab Mr. Paulino, he pulled away and

11  ran into the car (Cruz Depo at 86: 12-17.)  Percipient witness Mr. Ramirez, who was

12  watching the incident from his apartment window, stated Eliel was in a bad position

13  because his legs were crossed and when the officer grabbed him,  he lost his balance.

14  (Ramirez Depo 36: 22-24.)  Ramirez also stated that after Eliel lost his balance and  the

15  Asian Officer ("Cruz") threw him to the ground and got on top of him (Ramirez Depo at

16  38: 14-20.) The video shows Officer Cruz step toward Mr. Paulino, grabbing hold of Mr.

17  Paulino as Mr. Paulino is pushed back by Officer Cruz and knocked into the patrol car

18  breaking the side view mirror. (Ramirez Video at 8:55- (9:01.)  A reasonable jury could

19  conclude that Officer Cruz grabbed Mr. Paulino and caused him to lose his balance

20  rather than purposefully pulling away from the officer. And if Mr. Paulino obviously fell

21  after losing his balance and it was unreasonable to believe otherwise, then a jury could

22  find that the beating and baton blows that followed constituted excessive force under the

23  Fourth Amendment. (Clark Decl. at ¶18 (J)(K) and (O).  Because there is a material

24  factual dispute as to whether Mr. Paulino purposefully pulled away from Officer Cruz,

25  Defendants' motion should be denied on this additional basis.

26  ////

27  ////

28  ////

3. __It is disputed whether Mr. Paulino was actively trying to keep his arm underneath his body__

Defendant's Motion contains an allegation Mr. Paulino was actively trying to keep his arm underneath his body. All defendant officers contend that once Mr. Paulino was face-down on the ground that Mr. Paulino actively tried to keep his arm underneath his body.  Mr. Ramirez stated Eliel was not fighting with the police as he was face down on the ground. (Ramirez Depo 44: 11-14.)  Eliel's right arm was under his body. (Ramirez Depo 44: 22-24.) Mr. Paulino could not give his right arm to the police, even if he wanted to.  His right arm was under his body and both officers were on top of Eliel and he was lying face down. (Ramirez Depo 44: 25; 45 1-19.) If Mr. Paulino was not actively trying to keep his arm underneath his body and it was instead trapped beneath him, then a jury could find that the beating and baton blows that followed constituted excessive force under the Fourth Amendment.  (Clark Decl. at ¶18 (J)(K) and (O).) Because there is a material factual dispute as to whether Mr. Paulino actively tried to keep his arm underneath his body, Defendants' motion should be denied on this additional basis.

C. __Plaintiff has not alleged a false arrest claim__

Plaintiff has alleged an excessive force claim under the Fourth Amendment, and state claims  for  battery, negligence, intentional infliction of emotional distress and violation of Cal. Civ Code §52.1 ("The Bane Act"). Plaintiff has not alleged a false arrest claim therefore it is unnecessary for the court to consider a ruling on a nonexistent claim.

////
////
////
////
////

1

**D.     Officers Cruz, Silva and Sohal Used Excessive Force When They Assaulted Mr. Paulino Without Any Legal Justification**

2

3

4

**1.     Legal Analysis**

All claims of excessive force must be evaluated under the standard of objective reasonableness. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  The reasonableness of a seizure, including the use of force to arrest, is determined by "'careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

The first step of the *Graham* analysis is to evaluate the type and amount of force used.  *Bryan v. McPherson*, 590 F.3d 767, 772 (9th Cir. 2009).  The Court should then "'balance the amount of force applied against the need for that force.'"  *Id.* (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003).  [A]ll force—lethal and non-lethal—must be justified by the need for the specific level of force employed."  *Bryan*, 590 F.3d at 773-74.  Relevant factors to this inquiry include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

These factors, however, are not exclusive. The reasonableness of a seizure must be assessed by carefully considering the objective facts and circumstances that confronted the arresting officers. *Graham*, 490 U.S. at 396. Consideration should be given to the availability of alternative methods to effectuate an arrest or overcome resistance.  *Smith*, 394 F.3d at 701.  Additionally, the fact that a warning did not precede the use of force is another significant factor to consider.  *Bryan*, 590 F.3d at 779-80 ("[T]hat Officer McPherson did not provide a warning . . . and apparently did not consider less intrusive means of effecting Bryan's arrest factor significantly into our *Graham* analysis."); *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001)

("[W]arnings should be given, when feasible, if the use of force may result in serious injury, and . . . the giving of a warning or the failure to do so is a factor to be considered in applying the *Graham* balancing test.")

The Ninth Circuit recently reaffirmed that courts may not base their analyses "on what officers actually felt or believed during an incident." *Bryan*, 590 F.3d at 780. "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Id.* at 775 (quoting *Deorle*, 272 F.3d at 1281). Further, the Ninth Circuit has held that "'we must be wary of self-serving accounts by police officers when the only non-police eyewitness is dead.'" *Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir. 2007); *cf. Price v. Sery*, 513 F.3d 962, 980 (9th Cir. 2008) (noting "the continuing importance of assessing the 'quantum of evidence' supporting an officer's belief that a perceived threat exists") (concurring opinion).

If the evidence, reviewed in the light most favorable to the Plaintiff, could support a finding of excessive force, then the defendants are not entitled to summary judgment. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom . . . summary judgment or judgment as a matter of law . . . should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003); see also *Liston v. County of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (as amended) ("we have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.")

Under Plaintiff's evidence and the reasonable inferences there from, a reasonable fact finder could conclude that the officers used excessive force when the Defendants grabbed Mr. Paulino, threw him to the ground, jumped on his back and struck him with the baton over a dozen times as he laid defenseless face down and was not resisting. Thus, Defendants have not established that they are entitled to summary judgment on Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983.

////

## 2. <u>Nature and Quality of Intrusion</u>

The gravity of the particular intrusion that a given use of force imposed upon an individual's liberty interest is measured with reference to "the type and amount of force inflicted." *Deorle v. Rutherford*, 272 F.3d 1271, 1279 (9th Cir. 2001). In the instant case, Defendant Officers threw Mr. Paulino to the ground, jumped on his back and struck him with a baton over a dozen times as he laid defenseless faced down on the ground. Both the physical force used against Mr. Paulino and the baton blows are forms of force capable of inflicting significant pain and causing serious injury. (Clark Decl. at ¶18 (K).) While neither is necessarily deadly force, both nonetheless present a significant intrusion upon an individual liberty interests.

While not every push or shove violates the Fourth Amendment, tackling and punching a suspect, who does not otherwise pose a serious threat to officers or actively resist arrest, is a sufficiently serious intrusion upon liberty such that it must be justified by a serious government interest. See *Blackenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) The circumstances in *Blackenhorn* are almost identical to those in this case. Plaintiff  was detained at a mall for a possible non-violent, misdemeanor trespass violation.  At some point during the detention, a Defendant Officer grabbed the Plaintiff's arm. The Plaintiff pulled himself free, but did not thereafter take a combative stance, clench his fists or otherwise make any threatening gestures toward the Defendant Officers. Defendant Officers thereafter gang tackled the Plaintiff to the ground when the Plaintiff refused to kneel. While on the ground, the Plaintiff did not attempt to prevent the Defendant Officers from handcuffing him. While Defendant Officers claimed that the Plaintiff pinned his arms underneath his body, the video of the incident did not clearly show whether the Plaintiff did so or not. Defendant Officers nonetheless continued to punch the Plaintiff, place a knee on the back of his neck, and place Plaintiff in hobble restraints. The court concluded that under these circumstances, a rational jury could conclude that the use of force was unreasonable.

A court may also make a finding of excessive force where an officer uses a baton

on a non-threatening, non-resistant person. *Young v. City of Los Angeles,* 655 F.3d 1156 (9th Cir. 2011) [Use of baton and pepper spray was excessive where suspect was detained for seatbelt violation, posed no threat to officer, and did not actively resist or attempt to flee]. A police officer's use of a baton presents a significant use of force that is capable of causing pain and bodily injury. Police batons are classified as a deadly weapon. ("Clark Decl." at ¶ 11.)   Baton blows are therefore considered a form of "intermediate force." *Id.* at 1162 (citing *United States v. Mohr*, 318 F.3d 613, 623 (4th Cir. 2003).

Defendant Officers used a significant amount of two forms of force known to cause serious pain and injury. There is no question that this use of force against Mr. Paulino was a sufficiently serious intrusion upon his liberty. Thus, the use of force in this case must be justified by a significant government interest.

### 3.   **Government Interest**

#### a.   **Mr. Paulino did not pose a threat an immediate threat to Defendant Officers or others**

The "most important" factor under *Graham* is whether the suspect posed an "immediate threat to threat to the safety of the officers or others."  "A simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern."  *Deorle,* 272 F.3d at 1281. Rather, the objective facts must indicate that the suspect poses an immediate threat to the officer or a member of the public.

In this case, even though there is a video of the incident, the parties are in dispute as to whether Mr. Paulino posed an immediate threat to officer safety.[1]  Officer Cruz

---

[1] The defendants themselves are in dispute over what the video of the incident depicts. According to Officer Cruz, the video shows Mr. Paulino taking a fighting stance. (Cruz Depo at 79: 19-25; 80: 1-4.) According to Officer Sohal the video does not show Mr. Paulino actively resisting and actively preventing the police from obtaining his arm and taking him into custody.  (Sohal  Depo  at 62: 8-18.)

1  contends that Mr. Paulino clenched his fists and took a fighting stance before Officer

2  Cruz attempted to place Mr. Paulino in handcuffs.  Mr. Paulino denies this. Percipient

3  witness Mr. Ramirez also provides contrary testimony, stating that Mr. Paulino in no

4  way threatened any of the officers. However, it is undisputed that Mr. Paulino was

5  unarmed. Officer Silva and Officer Sohal pat searched Mr. Paulino early on in their

6  investigation, determine that he was unarmed and thereafter allowed Paulino to remain

7  uncuffed and unrestrained for several minutes while they continued their investigation. It

8  is also undisputed that Mr. Paulino was not nor appeared to be a gang member.[2]

9  Although Paulino continued to speak in Spanish over Officer Cruz's commands, at no

10  point did he level a physical or verbal threat against Officer Cruz or anyone else. See

11  *Smith v. City of Hemet*, 394 F.3d 689, 702-703 (9th Cir. 2005) (recognizing that

12  although the victim was shouting expletives, there was no threat leveled against the

13  officer.)  Considering the evidence in the light most favorable to Plaintiff, a rational jury

14  could very well find that Mr. Paulino did not, at any time, pose a danger to the officers

15  or others.

16        **b.    Paulino's minor traffic violations did not warrant**

17             **Defendant Officers' use of significant force**

18        Likewise, the "severity of the crime" factor favors Plaintiff.  Paulino committed

19  two offenses prior to Cruz's use of force. First he drove his truck without a working rear

20  license plate light, an infraction that led Officer Silva and Officer Sohal to initiate the

21  traffic stop. Second, Paulino did not immediately pull over after Officer Silva and Offcer

22  Sohal activated their lights and sirens. Per Officer Silva/Sohal, this alleged evading

23  lasted thirty seconds and per Plaintiff, there was no safe place to pull over until he

24

25  [2] In *Estate of Diaz v. City of Anaheim*, 834 F.3d 1048 (9th Cir. 2016), where the Officer had no prior
    knowledge of decedent's gang affiliation, the court held that gang evidence is not wholly relevant to

26  the issue of liability. In this case, Defendants' repeatedly mention in their moving papers that the
    incident occurred in a gang area. Because Defendant Officers were unaware of any gang affiliation by

27  Plaintiff and because Plaintiff did not appear to be a gang member, it is Plaintiff's position that the
    neighborhood in which the incident occurred plays no role in the determination of excessive force.

28

reached his designated parking spot outside his apartment. Once stopped, Officers initiated a DUI investigation. This investigation was still pending when Officer Cruz threw Mr. Paulino to the ground.  Mr. Paulino's malfunctioning rear license plate light was a mediocre traffic violation that provided little, if any support for the use of force upon him. *Bryan* ,630 F.3d 828 ["Traffic violations generally will not support the use of a significant level of force."] And while Paulino's failure to immediately pull over provides more justification for force than did his minor traffic infraction, such conduct still constitutes only a non-violent misdemeanor that will test to justify force in far fewer circumstances than more serious *Headwaters* offenses, such as violent felonies. *Bryan*, 630 F.3d at 828-829 (quoting, 240 F.3d at 1204)  "While 'the commission of a misdemeanor offense is "not to be taken lightly," it militates against finding the force used to effect an arrest reasonable where the suspect was also nonviolent and "posed no threat to the safety of the officers or others."'] When, as here, a suspect's disobedience of a police officer takes the form of passive noncompliance that creates a minimal disturbance and indicates no threat, immediate or otherwise, to the officer or others, it will not, without more, give rise to a governmental interest in the use of significant force. Because neither of Mr. Paulino's suspected offenses indicated that he posed a danger to Defendant Officers or the public such that there would be a heightened interest in the use of force to subdue him, the "severity of the crime at issue" weighs against the finding that the government had an interest in the use of significant force.

### c.     Mr. Paulino was not actively resisting

In assessing the governmental interest in force, the court must consider whether Mr. Paulino was actively resisting arrest. *Young*, 655 F.3d at 1165 (quoting *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003). The parties are in dispute over whether Mr. Paulino actively resisted arrest when Defendant Officer Cruz grabbed hold of Mr. Paulino's arm and later when Mr. Paulino was face-down on the ground. When viewing the disputed facts in favor of Mr. Paulino, this factor also weighs against a finding that

the government had a significant interest in the use of force in this case.

Defendants contend that Mr. Paulino pulled his hand away when Officer Cruz first attempted to place Mr. Paulino in handcuffs. Mr. Paulino contends that he merely lost his balance when Defendant Officer Cruz grabbed. However, Defendants further contend that even if Mr. Paulino lost his balance, that it was reasonable for Officer Cruz to believe that Mr. Paulino was actively pulling his arm and body away from his grasp. But this perception is unreasonable, especially when it was so obvious to percipient witness Mr. Ramirez that Mr. Paulino lost his balance. (Ramirez Depo at 36: 22-24; 38: 14-20.)

Defendants further contend that Mr. Paulino continued to actively resist arrest when he was face-down on the ground. Again, Defendants contend that even if Mr. Paulino was not physically able to pull his arm out from under him during the beating, that it was nevertheless reasonable for Defendant Officers to believe that Mr. Paulino was resisting arrest. Again, for percipient witness Mr. Ramirez, it was obvious that Mr. Paulino's arm was trapped under his body and that he was not resisting. (Ramirez Depo. at 44:25; 45: 1-19.)  Thus, it was unreasonable for Defendant Officers to believe Mr. Paulino was actively resisting arrest when he was face-down on the ground.

### 4.    Balancing Governmental Interest Against Nature of Intrusion

When balancing the gravity of the intrusion on Mr. Paulino against the government's need for that intrusion, the scale tips in favor of Mr. Paulino. The physical force in conjunction with the baton blows used against Mr. Paulino constitute a significant intrusion upon Mr. Paulino's liberty. Further, all three factors traditionally used to assess the government's interest, as discussed above, weigh against a finding that the force used in this case was reasonable.

First, the threat to officer safety was negligible when Mr. Paulino was unarmed, had previously complied with officer commands and remained unrestrained for several minutes. To the extent the Defendants argues that their subjective fears justified their use

of force, such an argument would, at most, raise a question for the jury as to whether it was reasonable for the Defendant Officers to fear an assault from a man who was compliant and unarmed; who Officer Sohal and Officer Silva had previously determined was not a threat; and who otherwise made no verbal threats or assaultive gestures. Second, the crimes involved in this traffic stop were non-violent misdemeanors and were thus, not sufficiently severe to justify the use of significant force. Finally, it is a question of fact whether Mr. Paulino actively resisted officers and whether it was reasonable for the Defendant Officers to believe that Mr. Paulino was actively resisting when he lost his balance and when he later had his arm trapped beneath him.

Because Defendant Officers used a significant amount of force against Mr. Paulino, and because the governmental interest in that use of force is minimal, taking the facts in the light most favorable to Mr. Paulino, the court must find that the force used was excessive.

### E.    Defendant Officers Are Not Entitled to Qualified Immunity

The Court should deny Defendants' Motion on qualified immunity defense. Defendants bear the burden of establishing there is no genuine issue of material fact and the affirmative defense of qualified immunity is established as a matter of law. *Crawford-El v. Britton*, 523 U.S. 574, 587 (1998). The purpose of the immunity inquiry is "to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).  "[S]ince a reasonably competent public official should know the law governing his conduct," qualified immunity does not apply when the relevant law is clearly established.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).

"In excessive force cases, the inquiry remains whether 'under the circumstances, a reasonable officer would have had fair notice that the force employed was unlawful,

and [whether] a mistake to the contrary would have been unreasonable.'" *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (quoting *Drummond*, 343 F.3d at 1060). The Supreme Court in *Saucier* outlined a two-step approach to qualified immunity.  The first step requires the court to ask whether, taking the facts "in the light most favorable to the party asserting the injury," the facts alleged show that "the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201; *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009).  "If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established:  in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Millender*, 564 F.3d at 1148 (quoting *Saucier*, 533 U.S. at 201).  It has also been clearly established since 2001 that a mistaken but unreasonable use of force violates the Fourth Amendment.  "Not all errors in perception or judgment[] are reasonable." *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011); *Santos v. Gates,* 287 F.3d 846, 855 n. 12 (9th Cir. 2002) (whether the officers may be said to have made a 'reasonable mistake' of fact or law" is a jury question) (internal citation omitted).

Here, qualified immunity is not available to the defendants for two independent reasons.  First, as set forth above, disputed issues of material fact preclude granting qualified immunity on summary judgment.  *See Glenn v. Washington Cnty.*, 673 F.3d 864, 870 n.7 (9th Cir. 2011) (citing *Espinosa v. City & County of San Francisco,* 598 F.3d 528, 532 (9th Cir. 2010) ("denial of summary judgment on qualified immunity grounds because 'there are genuine issues of fact regarding whether the officers violated [the plaintiff's] Fourth Amendment rights [, which] are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions'")); *Knox v. Southwest Airlines*, 124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable issues of fact).  The disputed material facts, as well as the need for credibility determinations to be made in construing the facts, make evaluating the reasonableness of the Defendants' conduct impossible at this pre-

trial stage.  *See Act Up! Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) ("If a genuine issue of fact exists preventing a determination of qualified immunity at summary judgment, the case must proceed to trial.").  Because of the overwhelming number of disputed issues of material facts in this case, including whether Mr. Paulino was a threat to the Defendants,  whether  he engaged in pre-assaultive behavior, whether he pulled away from officer Cruz as he was being grabbed,  whether he prevented the officers from grabbing his arm when it was pinned under his body and whether he resisted arrest at any point during this incident,  granting qualified immunity at this stage would violate this well-established precedent.  *See Anderson v. Creighton*, 483 U.S. 635, 641 (1987).  Thus,  given the number of disputed issues,  the testimony of civilian witness of Juan Ramirez and the video recording of the Defendants taken at the time this incident occurred,  qualified immunity should not be granted.

Second, at the time of the assault, the law was clearly established that an officer may not "use significant force against a suspect who was suspected of a minor crime, posed no apparent threat to officer safety, and could be found not to have resisted arrest was thus well established in 2001," fourteen years before the events at issue in this case. *Young,*  655 F.3d at 1168. Just as in *Blackenhorn* and *Young,* these well-established principles of *Fourth Amendment* law sufficed to put Officer Cruz, Officer Silva, and Officer Sohal on notice that the use of force was excessive –that throwing an individual to the ground and repeatedly striking him with baton for disobeying an order to "shut up" constituted a violation of the *Fourth Amendment.*

Accordingly, Officer Cruz, Officer Silva, and Officer Sohal were on fair notice that it would violate the Fourth Amendment to use significant physical force and baton blows under the circumstances and the resolution of their qualified immunity defense is not appropriate at this stage.

////

////

1

### F.      **Plaintiffs' State Law Claim Raises Triable Issues Of Fact**

Defendants argue that because the officers' conduct was reasonable under the Fourth Amendment, Plaintiffs' state law claims for battery, negligence, intentional infliction of emotional distress, and a violation of the Bane Act should be dismissed. Plaintiffs respond that because Defendants, as above, have not carried their burden of establishing that summary judgment is warranted, and because there is substantial evidence to support Plaintiffs' claims for battery, negligence, intentional infliction of emotional distress and a violation of the Bane act, such claims should not be dismissed. Further, the defense of qualified immunity does not apply to state claims.

## V. CONCLUSION

For all the foregoing reasons, it is respectfully requested that this Court deny Defendants' Motion for Summary Judgment.

DATED:      May 19, 2017

By: */s/ Jaime A. Leaños*
JAIME A. LEAÑOS
Attorney for Plaintiff
Eliel Paulino