United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIEL PAULINO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MARCO CRUZ, GERARDO SILVA, AND GURBAKSH SOHAL,<br><br>　　　　Defendants. | Case No. 16-cv-02642-NC<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 49 |

Plaintiff Eliel Paulino claims that San Jose Police Officers Marco Cruz, Gerardo Silva, and Gurbaksh Sohal violated his rights under the Fourth Amendment and various state laws when they arrested Paulino by taking him to the ground and striking him with batons. The defendant officers moved for summary judgment on all of Paulino's claims, arguing that the force they used was reasonable as a matter of law and that qualified immunity shields them from liability. Fatal to defendants' motion, however, the material facts of the case are far from undisputed. Most importantly, the parties dispute whether Paulino took a "preassaultive" stance and actively resisted Officer Cruz's initial attempt at arrest by withdrawing his arm, and whether Paulino intentionally withheld his right arm from the officers to avoid being handcuffed when he was on the ground. Because a reasonable jury could find for either party on these factual issues, summary judgment must be denied.

## I. BACKGROUND

On August 16, 2015, around 2:00 a.m., Officers Sohal and Silva were on patrol in a two-man vehicle near Cadillac Drive and Winchester Street in San Jose. Dkt. No. 49-2 at

Case No. 16-cv-02642-NC

9–11. Defendants claim they knew this area was frequented by gang members and often had drug-related crime. Dkt. No. 49-3 at 8–9. The officers spotted Paulino's vehicle and initiated a stop because the rear license plate light was not functioning. Dkt. Nos. 49-2 at 12, 49-3 at 8. Paulino drove into a parking lot behind an apartment complex at 3137 Cadillac Drive and pulled into a parking space, with Officers Sohal and Silva following behind in the patrol car. Dkt. No. 49-2 at 13.

A video[1] captures the remainder of the incident, beginning with Paulino and the two officers entering the parking lot. Dkt. No. 50 ("Video"). The video is visible, albeit dark, but no sound is audible.

Once Paulino parked, Officer Silva instructed Paulino to stay in his vehicle while Officer Sohal searched the parking lot for other possible suspects. Dkt. No. 49-2 at 17. Paulino complied with the order. Dkt. No. 49-2 at 17. When Officer Sohal returned, Officer Silva instructed Paulino to exit his vehicle and approach the officers, which he did. Dkt. No. 49-2 at 17–18. Officer Silva asked Paulino, in Spanish, whether he was drunk, and Paulino told him he was. Dkt. No. 49-4 at 24. The officers asked for identification, and Paulino gave them his Mexican Consulate card. Dkt. No. 49-4 at 24–25. Officer Sohal then pat searched Paulino, who was cooperative, and found no weapons. Dkt. No. 49-3 at 13–14. Shortly thereafter, Officer Cruz arrived on scene. Video at 5:30. Officer Cruz stood next to Paulino, who was leaning on the patrol vehicle's front panel, while Officer Sohal searched Paulino's vehicle and Officer Silva ran Paulino's information in the patrol vehicle computer. Video at 6:55–7:30; Dkt. No. 49-3 at 16–17.

During these events, a man later identified as Paulino's father, Jose Luis Paulino Norberto, was talking and yelling from a window in the nearby apartment building. Dkt. No. 49-3 at 18, 53. Paulino began talking with his father in Spanish, which Officer Cruz does not understand. Dkt. No. 49-3 at 56–58. Officer Cruz instructed Paulino to stop

---

[1] The video is from a security surveillance camera installed by Juan Ramirez, a resident at the apartment complex where the incident took place. Dkt. No. 49-4 at 10–12. Ramirez also provided witness testimony. Dkt. No. 49-4 at 1–15.

Case No. 16-cv-02642-NC  2

talking, but Paulino continued speaking to his father in Spanish. Dkt. Nos. 49-3 at 57–58, 49-4 at 31–32.

The parties disagree on the details of what happened next, but the video shows the following. Officer Cruz walks closer to Paulino and reaches for Paulino's arm, seemingly in an attempt to handcuff him. Officer Cruz does not immediately get the handcuffs on and continues to grab at Paulino's arms, and both men stumble back along the patrol car toward the front passenger door, which sits ajar. The other two officers quickly move to the scene. Paulino hits the passenger door with his body and nearly falls, at which point Officer Silva jabs Paulino with a baton. Officer Silva steps away from the struggle as Officers Cruz and Sohal work to bring Paulino to the ground. Paulino winds up on the ground with Officer Cruz on top of him. The video is too dark to ascertain many more details, but while Paulino is on the ground, Officer Sohal strikes Paulino with his baton several times, pausing occasionally and reaching down toward Paulino. Officer Silva returns to the struggle, and the three officers restrain Paulino. Video at 8:55–10:20.

Defendants assert that before Officer Cruz initially tried to handcuff Paulino, Paulino took a "preassaultive" stance and clenched his fists. Dkt. No. 49 at 11. When Officer Cruz reached for Paulino's arm, defendants claim Paulino drew back and prevented his arm from being handcuffed. Dkt. No. 49 at 11. They also assert that, even if Paulino did not intend to resist Cruz's efforts at arrest, Paulino's body weight falling away from Officer Cruz gave the impression of resistance. Dkt. No. 49 at 11. After bringing Paulino to the ground, defendants allege Officer Cruz "placed his left shin across Plaintiff's back to keep him from getting up" while Officer Sohal attempted to gain control of Paulino's right arm. Dkt. No. 49 at 13. According to defendants, Paulino actively prevented Officer Sohal from accessing his right arm by keeping it underneath his body, and Officer Sohal responded by striking Paulino with his baton to induce Paulino's cooperation. Eventually, defendants claim, Paulino relented by saying "okay, okay" and giving up his arm. Dkt. No. 49 at 13.

Paulino offers a different version of the facts. According to him, he did not resist

Case No. 16-cv-02642-NC 3

1 Officer Cruz's initial attempt to handcuff him, and he fell backward inadvertently because his feet were tangled and he lost his balance. Dkt. No. 53 at 9. After stumbling backward and hitting the patrol car's front passenger door, Paulino claims he was "thrown to the ground" and landed face down before Officer Sohal "arrived and put his knee on [Paulino's] back and hit him very hard with the baton." Dkt. No. 53 at 9. Paulino contends that he was unable to free his right arm because it was pinned beneath his body and that once he said, "no problem," the officers stopped hitting him. Dkt. No. 53 at 10. He asserts that at no time did he "challenge, resist, fight, or threaten the officers." Dkt. No. 53 at 10.

Paulino filed this action against the defendant officers on May 17, 2016, alleging excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 and state law claims for battery, negligence, and intentional infliction of emotional distress. Dkt. No. 1. Paulino filed an amended complaint adding a claim under California Civil Code § 52.1. Dkt. No. 28. Defendants moved for summary judgment on all claims, Dkt. No. 49, and Paulino opposed the motion. Dkt. No. 53. All parties consented to the jurisdiction of a magistrate judge. Dkt. Nos. 11, 19.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Reasonable factual inferences must be construed in favor of the non-moving party, and summary judgment should not be granted if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Because police misconduct cases frequently involve "disputed factual contentions" and "almost always turn on credibility determinations," the Ninth Circuit has "held on many occasions that summary judgment . . . in excessive force cases should be granted sparingly." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (citation

Case No. 16-cv-02642-NC   4

omitted); *see also Liston v. Cty of Riverside*, 120 F.3d 965, 976 n.10 ("[T]he reasonableness of force used is ordinarily a question of fact for the jury.").

## III. DISCUSSION

Defendants assert that undisputed material facts entitle them to summary judgment on each of Paulino's claims. However, the parties offer materially different versions of the dispositive facts, and the video—which offers the most objective depiction of events—does not clearly support defendants' position. Most importantly, the degree to which Paulino resisted arrest is not clear, and there is no indisputable evidence that Paulino was a serious threat to anyone's safety. This uncertainty vitiates defendants' summary judgment motion on excessive force, qualified immunity, and the remaining state law claims.

### A. Triable Issues of Fact Preclude Granting Summary Judgment on Paulino's Excessive Force Claim.

Summary judgment is not warranted for any of the officers regarding Paulino's Fourth Amendment excessive force claim. Defendants' argument hinges on their claim that the officers reasonably believed Paulino was resisting arrest. *See* Dkt. No. 49 at 15–19. But the undisputed evidence on record, especially the video of the incident, simply does not support this claim to a degree that warrants summary judgment. A jury could reasonably conclude that Paulino was cooperative and not resisting arrest, and that the force used was unreasonable under the circumstances.

Under the Fourth Amendment, police officers may use only "objectively reasonable" force "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). This test requires courts to balance the "nature and quality of the intrusion on a person's liberty with the countervailing governmental interests at stake." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007). To do so, courts primarily consider three factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. Other

Case No. 16-cv-02642-NC 5

factors relevant to the specific circumstance may be considered as well. *See Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010); *George v. Morris*, 736 F.3d 829, 837–38 (9th Cir. 2013). The second *Graham* factor—whether the suspect posed an immediate threat to officer or public safety—is most important. *Young v. Cty. of Los Angeles*, 655 F.3d 1156, 1163 (9th Cir. 2011) (citing *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005)). The reasonableness of a particular use of force is evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citation omitted).

Here, the nature of the intrusion was use of physical force that included taking Paulino to the ground, kneeling on him to hold him down, and using baton strikes to effectuate arrest, so the Court queries whether these uses of force were objectively reasonable under the circumstances, from the perspective of an officer in the defendants' shoes. Notably, defendants focus more on Paulino's resistance than on any threat to safety he created. *See* Dkt. No. 49 at 15–19. Because defendants moved for summary judgment, the Court makes credible factual inferences in Paulino's favor. Each officer's actions are evaluated separately.[2]

### 1. Officer Cruz

Officer Cruz initiated the physical effort to arrest Paulino while the other two officers stood or sat nearby. Video at 8:50. Making factual inferences in Paulino's favor, Officer Cruz reached for Paulino's arms and pushed him, causing Paulino to stumble over his own tangled feet. Officer Cruz, along with Officer Sohal, then tackled or threw Paulino to the ground and kneeled on his back while Officer Sohal used his baton to strike Paulino.

Tackling and kneeling upon a suspect may constitute excessive force when a

---

[2] Note, though, that an officer need only to have been an "integral participant," which "does not require that each officer's actions themselves rise to the level of a constitutional violation." *Blankenhorn*, 485 F.3d at 481 n.12 (quoting *Boyd v. Benton Cty.*, 374 F.3d 773, 780 (9th Cir. 2004)). It requires only "some fundamental involvement in the conduct that allegedly caused the violation." *Id.*

Case No. 16-cv-02642-NC  6

suspect is not resisting or is only minimally arresting, and the suspect is not causing a serious safety risk. In *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), the Ninth Circuit denied summary judgment for defendant officers who "gang tackled" a suspect, kneeled on his body while he was face down, punched him while attempting to extricate his arm from beneath his body, and used hobble restraints. *Id.* at 477–80. The defendant officers in Blankenhorn claimed that the plaintiff had taken a combative stance before the arrest and intentionally held his arm beneath his body when he was on the ground, and the plaintiff's own evidence showed that he offered some resistance during his arrest, including refusing to kneel down when ordered to do so, jerking his arm away from an officer's grip, and yelling and raising his arms. *Id.* at 469–70. Still, the court held that a reasonable jury could conclude that tackling and kneeling on the plaintiff was unreasonable under the circumstances. *Id.* at 479–80. The non-serious nature of the crime (trespassing) and absence of a serious threat to the officers' or others' safety weighed against the defendants, and the plaintiff's version of the facts reflected only minimal resistance before and during the arrest. *Id.* at 479.

Here, as in *Blankenhorn*, a jury could reasonably find that Officer Cruz violated Paulino's Fourth Amendment rights by taking him to the ground and pinning him down with his knee. Paulino's testimony suggests he was cooperative, non-violent, and unresisting, and Ramirez's witness testimony supports that claim. Dkt. No. 49-4 at 8–10, 32–41. The video also does not clearly show otherwise. Based on these facts, a reasonable jury could find that Paulino offered little or no resistance to arrest and created little risk to others' safety, making Officer Cruz's actions unreasonable. Thus, summary judgment may not be granted in Officer Cruz's favor.

### 2. Officer Silva

Officer Silva used his baton to jab Paulino in the midsection before the other two officers brought Paulino to the ground. Video at 9:00–9:05. Defendants argue that Officer Silva reasonably believed Paulino was actively resisting Officer Cruz's attempts at arrest when Officer Silva struck Paulino. Dkt. No. 49 at 20–21.

Case No. 16-cv-02642-NC 7

Batons are considered an intermediate use of force that requires a commensurately serious state interest. *Young*, 655 F.3d at 1161. While active resistance may warrant the use of batons in some cases, little or no resistance typically does not. *See id.* (holding that a reasonable jury could find excessive force by an officer who pepper sprayed and used a baton to strike a minimally-resistant suspect); *see also Felarca v. Birgeneau*, No. 11-cv-5719-YGR, 2016 WL 324351, at *17 (N.D. Cal. Jan. 27, 2016) (denying summary judgment for defendant officers on excessive force claims where the officers used batons to break through a crowd of protesters). Batons may not be reasonable even when a suspect is actively resisting arrest in a dangerous situation. *See Hudson v. City of San Jose*, No. 05-cv-03015-RS, 2006 WL 1128038, at *4 (N.D. Cal. Apr. 27, 2006) (finding triable issues of fact that precluded summary judgment where officers used tasers and batons on a suspect who was actively wrestling with an armed officer).

The facts do not indisputably show that Paulino resisted in a way that justifies baton strikes as a matter of law. This is especially true because, when a person is "not perfectly passive" but his resistance is also not "particularly bellicose," the resistance factor offers "little support" for the use of more significant force. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013). As always, the inquiry is whether, in light of all the circumstances, the force was reasonable. *See Bryan*, 630 F.3d at 830 ("We must eschew ultimately unhelpful blanket labels and evaluate the nature of any resistance in light of the actual facts of the case."). Although defendants argue Officer Silva reasonably believed Paulino was resisting Officer Cruz's efforts at arrest, Paulino's version of the facts simply do not support this contention. Because there are disputed factual questions about the degree of resistance Paulino offered and the reasonableness of Officer Silva's response, summary judgment is not appropriate.

### 3. Officer Sohal

Officer Sohal used more force than either of the other two officers. He was involved in the take-down of Paulino and struck Paulino numerous times with a baton. Video at 9:02–9:28. As discussed above, a jury could find that the lesser uses of force by

Case No. 16-cv-02642-NC     8

1  Officers Cruz and Silva were unreasonable under the circumstances, and the same is true
2  of the significantly greater amount of force used by Officer Sohal. Summary judgment
3  cannot be granted in favor of Officer Sohal.

### B. The Officers Are Not Entitled to Qualified Immunity.

Defendants also argue they are entitled to qualified immunity because they reasonably believed at the time of the incident that there were not violating Paulino's rights. Dkt. No. 49 at 25–27. An officer is entitled to qualified immunity as a matter of law only if, taking the facts in the light most favorable to the nonmoving party, he did not violate any clearly established constitutional right. *Torres v. City of L.A.*, 548 F.3d 1197, 1210 (9th Cir. 2008). The analysis involves two determinations: (1) whether the facts alleged show the officers violated a constitutional right; and (2) whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Conner v. Heiman*, 672 F.3d 1126, 1132 (9th Cir. 2012).

At the time of Paulino's arrest, it was clearly established that the degree of force used by the officers would be excessive if Paulino was unresisting and nonviolent. Typically, the "very action at issue" need not have been held unlawful before qualified immunity is shed. *Wall v. Cty. of Orange*, 364 F.3d 1107, 1111 (9th Cir. 2004). But here, Paulino's rights vis-à-vis the defendants' actions were eminently clear at the time of the incident, because the Ninth Circuit addressed a nearly identical situation in *Blankenhorn*. There, the plaintiff had committed a relatively minor crime, was not obviously a safety threat to others, and offered a disputed level of resistance similar in magnitude to the resistance contemplated here. *Blankenhorn*, 485 F.3d at 469–70. According to the defendants in *Blankenhorn*, the plaintiff pulled his arm away from an officer, clenched his fists and took a combative stance, and refused to kneel when told. *Id.* The officers responded by tackling the plaintiff to the ground and kneeled on him while he was face down, and then punched him while trying to access and handcuff his arm from beneath his

Case No. 16-cv-02642-NC           9

body. *Id.* A video captured the incident. *Id.*

Officers "can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), but in light of *Blankenhorn*, it is hard to imagine a less novel factual situation than the one defendants encountered here. The Ninth Circuit in *Blankenhorn* held that a reasonable jury could find the officers' use of force was unreasonable given the circumstances and refused to grant qualified immunity. The Court does the same here. The first element of the *Saucier* test—whether there was a violation of a right—is a factual question for the jury. And the second element—whether the right was clearly established—does not entitle defendants to summary judgment, because the rights violations alleged here were addressed to a T in *Blankenhorn*. *See id.*; *see also Torres*, 548 F.3d at 1210 (holding that if reasonable jurors could believe that the defendant violated the plaintiff's constitutional right, and the right at issue was clearly established, the case should proceed to trial).

### C. Factual Disputes Preclude Summary Judgment on the State Law Claims.

Paulino's remaining claims ultimately depend on the same disputed facts as the excessive force claim. Each of them centers on the defendants' and Paulino's conduct, which are heavily disputed by the parties and not objectively resolved by the video evidence. Thus, summary judgment is not warranted for these claims.

### IV. CONCLUSION

Because the parties disagree on facts that are material to all of Paulino's claims, and because the Fourth Amendment rights at issue were established with sufficient clarity to preclude qualified immunity, defendants' motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: July 7, 2017

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

Case No. 16-cv-02642-NC          10